UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Jaime M.,[1]<br><br>    Petitioner,<br><br>v.<br><br>Merrick B. Garland, Attorney General; Alejandro Mayorkas, Secretary, Department of Homeland Security; Tae D. Johnson, Acting Director, Immigration and Customs Enforcement; Marcos Charles, Director, St. Paul Field Office Immigration and Customs Enforcement; and Joel Brott, Sheriff, Sherburne County,<br><br>    Respondents. | Civ. No. 21-743 (NEB/BRT)<br><br>**REPORT AND RECOMMENDATION** |

Jaime M., *pro se* Petitioner.

Adam J. Hoskins, Esq., and Ana H. Voss, Esq., Assistant United States Attorneys, counsel for Federal Respondents.

BECKY R. THORSON, United States Magistrate Judge.

    Petitioner Jamie M. ("Petitioner"), a native and citizen of Mexico, is currently in the custody of the Immigration and Customs Enforcement Agency ("ICE") pending the

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in immigration matters such as the present matter. Accordingly, where the Court refers to Petitioner by his name, only his first name and last initial are provided.

outcome of his ongoing removal proceedings. Under 28 U.S.C. § 2241, Petitioner seeks relief in the form of immediate release from custody or, in the alternative, a bond hearing in which Respondents shall bear the burden of proof by clear and convincing evidence as to why Petitioner should be kept in detention. (Doc. No. 1, Habeas Pet.) For the reasons stated below, this Court recommends that the Petition be granted in part and denied in part, and that Petitioner's pending motions for a temporary restraining order and emergency review be denied as moot.

I.      **Background**

Petitioner is a native and citizen of Mexico who entered the United States of America on or about November 20, 1989, at the age of nine without admission or parole. (Doc. No. 5, Ligon Decl. ¶¶ 4–5; Habeas Pet. ¶¶ 8–9.) On June 13, 2005, the United States Citizenship and Immigration Services adjusted Petitioner's status to that of a lawful permanent resident. (Ligon Decl. ¶ 6.) On March 18, 2008, Petitioner was convicted of a felony for first-degree sale of a controlled substance (methamphetamine). (*Id.* ¶ 6.) On December 27, 2019, ICE arrested Petitioner and issued a Notice to Appear ("NTA") charging Petitioner as removable under sections 237(a)(2)(A)(iii) and 237(a)(2)(B)(i) of the Immigration and Nationality Act ("INA") for Petitioner's 2008 criminal felony conviction. (*Id.* ¶¶ 9–10.)

On July 2, 2020, an Immigration Judge ("IJ") ordered Petitioner removed from the United States to Mexico but granted Petitioner's application for deferral of removal under the Convention Against Torture. (*Id.* ¶ 16.) On July 14, 2020, the Department of Homeland Security ("DHS") filed an appeal with the Board of Immigration Appeals

("BIA"). (*Id.* ¶ 17.) Briefing for both sides finished on October 15, 2020. (*Id.* ¶ 21.) The BIA appeal remains pending.

Petitioner now seeks federal habeas relief, challenging the length of his detention. Petitioner argues that his ongoing detention at the Sherburne County Jail violates his right to due process under the Fifth Amendment. (*See generally* Doc. No. 1.) Respondents maintain that Petitioner's ongoing detention is constitutional under 8 U.S.C. § 1226(c). (*See generally* Doc. No. 4, Resp. to Pet. for Writ of Habeas Corpus ("Resp. to Pet.").) As detailed below, this Court recommends granting Petitioner's request for a bond hearing within thirty days of an Order adopting this Report and Recommendation.

## II.     Analysis

The primary habeas corpus statute, 28 U.S.C. § 2241, confers jurisdiction upon federal courts to hear constitutional challenges to the lawfulness of immigration-related detentions. *Zadvydas v. Davis*, 533 U.S. 678, 687–88 (2001).

### A.     Length of Detention

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores*, 507 U.S. 292, 206 (1993). Mandatory detention under Section 1226(c) does not violate a criminal noncitizen's due process rights during the "brief period necessary" for removal proceedings. *Demore v. Kim*, 538 U.S. 510, 513 (2003). "But a detainee's due process rights are implicated when the period of detention under Section 1226(c) is no longer 'brief.'" *Bolus A.D. v. Sec'y of Homeland Sec.*, 376 F. Supp. 3d 959, 961 (D. Minn. 2019) (citing *Zadvydas*, 533 U.S. at 682); *Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2020 WL 1062913, at *3

3

(D. Minn. Mar. 5, 2020) (noting that *Demore*'s holding that mandatory detention under § 1226(c) is facially constitutional cannot be separated from its "repeated, obvious references to the 'brief' and 'very limited' duration of most § 1226(c) detentions").

Courts in this District "resolve due process challenges to Section 1226(c) detention by closely examining the facts of the particular case to determine whether the detention is reasonable using the *Muse* multi-factor test." *Omar M. v. Garland*, No. 20-CV-1784 (NEB/BRT), 2021 WL 3442337, at *6 (D. Minn. Mar. 29, 2021) (citing *Muse v. Sessions*, 409 F. Supp. 3d 707 (D. Minn. 2018)); *see also Abdirizak*, 2020 WL 1062913, at *3 (collecting cases). Under *Muse*, courts look to:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays of the removal proceedings caused by the detainee; (5) delays of the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

409 F. Supp. 3d at 715.

As with previous habeas challenges to immigration detention, Respondents assert the *Muse* test is inappropriate. (Resp. to Pet., pp. 17–19.) But courts in this District have repeatedly rejected this argument. *See Pedro O. v. Garland*, No. 20-CV-2568 (ECT/KMM), 2021 WL 3046799, at *5–8 (D. Minn. June 14, 2021); *Abdirizak*, 2020 WL 1062913, at *3 ("Finally, there is an obvious intra-district trend to apply factors identical to those applied in the Report and Recommendation and Muse to evaluate a due-process challenge to a § 1226(c) detention. There is no good reason to buck this trend."); *Omar M.*, 2021 WL 3442337, at *6. Accordingly, this Court will not deviate from the well-

established *Muse* factors widely employed in this District.[2] The Court applies the *Muse* factors as follows:

    **1.**    **Total length of detention to date**. Petitioner was detained on December 27, 2019 – 614 days ago. (Ligon Decl. ¶ 9.) At the time, Petitioner's detention was pre-removal-period detention. This is beyond the "brief period" contemplated by *Demore*. 538 U.S. at 530; *see also Muse*, 409 F. Supp. 3d at 716 (finding the first factor weighed in Muse's favor where he spent 14 months in custody); *Tao J. v. Sec'y of Dep't of Homeland Sec.*, No. 18-CV-1845 (NEB/HB), 2019 WL 1923110, at *3 (D. Minn. Apr. 30, 2019) (finding factor favored petitioner detained 14.5 months without a bond hearing). This factor favors Petitioner.

    **2.**    **The likely duration of future detention**. "In estimating when detention will end, courts take into account the anticipated duration of all removal proceedings, including administrative and judicial appeals." *Muse*, 409 F. Supp. 3d at 716–17. Here, the government's appeal of the IJ's order deferring Petitioner's removal is still pending before the BIA. (Ligon Decl. ¶ 22.) Even if the appeal is "ripe for decision in the near future," (Resp. to Pet., p. 16), the ultimate decision is unknown, and there remains the possibility that the BIA's eventual decision may be appealed to the Eighth

---

[2] The government in their Response to the petition note in footnote four of their brief that the Eighth Circuit "is currently reviewing the appropriateness of the *Muse* framework in a pending government appeal." (Resp. to Pet., p. 17). However, that appeal has since been dismissed. *See Ayom v. Barr*, No. 19-cv-03143, Doc. No. 32, (DSD/BRT) (D. Minn. July 27, 2021).

Circuit.[3] Accordingly, there is no certainty about the duration of all removal proceedings. This factor is neutral and does not favor either party.

        3.      **Conditions of detention**. "Aliens held under § 1226(c) are subject to civil detention rather than criminal incarceration. The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Muse*, 409 F. Supp. 3d at 717 (internal citations omitted). Petitioner is currently detained at Sherburne County Jail. The government admits these are criminal correctional facilities. (Resp. to Pet., p. 21.) This factor favors Petitioner.

        4.      **Delays caused by the detainee**. Courts should be "sensitive to the possibility that dilatory tactics by the removable alien may serve not only to put off the final day of deportation, but also to compel a determination that the alien must be released because of the length of his incarceration." *Muse*, 409 F. Supp. 3d at 717 (quotations omitted). "If courts did not take into account the alien's role in delaying removal proceedings, they would encourage deportable criminal aliens to raise frivolous objections and string out the proceedings in the hopes that a federal court will find the delay unreasonable and order their release." *Id.* (quotations omitted). Here, the government takes great issue with Petitioner's five continuances, which delayed his

---

[3]    Though the "DHS has no right to appeal a BIA decision to the circuit court" as Respondents note in their Response to the petition, (Resp. to Pet., p. 21, fn. 6.), Petitioner, who has been charged as removable for conviction of an aggravated felony and a controlled substance offense relating to methamphetamine, still retains the ability to appeal constitutional claims or questions of law. *See, e.g., Guerrero-Lasprilla v. Barr,* 140 S. Ct. 1062, 1067 (2020).

individual hearing by at least three months. (Ligon Decl. ¶¶ 11–18.) Not only did these delays contribute to a relatively small percentage of Petitioner's detention time, but this Court does not find Petitioner's requests to be motivated by dilatory or strategic motives. Instead, Petitioner's requests concerned a series of circumstances unrelated to any strategic delay:

- requesting a continuance because Petitioner's attorney came down with the flu (Doc. No. 5-3, Petitioner's First Motion to Continue);

- requesting a continuance because Petitioner was still awaiting a copy of the Notice to Appear and I-213 document (Doc. No. 5-4, Petitioner's Second Motion to Continue);

- requesting a continuance because Petitioner's expert witness informed him he was not available for the scheduled hearing (Doc. No. 5-5, Petitioner's Third Motion to Continue);

- requesting a continuance in light of the immigration court scheduling Petitioner's hearing on a date Petitioner had already informed the court was unavailable for his expert witness (Doc. No. 5-6, Petitioner's Fourth Motion to Continue);

- counsel for Petitioner requesting an extension in light of counsel's personal life circumstances (Doc. No. 5-10, Petitioner's Motion for a Briefing Extension).

(Ligon Decl. ¶¶ 11–18.)[4]

---

[4] The government provides Exhibit G to their Response as evidence of Petitioner's fifth motion requesting a continuance. (Doc. No. 5-7.) There appears to be no record regarding the reason for this specific continuance to determine any motive. The Court observes, however, that this fifth continuance is not material because of the short delay

Thus, because the record does not suggest that Petitioner engaged in dilatory tactics during his removal proceedings beyond vigorously contesting his removal, as is his right, this factor favors Petitioner.

    **5.**    **Delays caused by the government**. There is no evidence that the government has engaged in any dilatory tactics. This factor favors the government.

    **6.**    **Likelihood that proceedings will result in final order of removal**. While Petitioner has been ordered removed by the IJ, that order also included a deferral of his removal to the only state where he holds citizenship – Mexico. (Doc. No. 5-8.) The government has appealed that determination. The BIA's decision is not known. Moreover, it is far from clear what the ultimate decision of the BIA will be or whether the BIA's decision will be appealed by Petitioner. Accordingly, this Court "does not have a sufficient basis to determine" whether Petitioner is likely to be removed. *Muse*, 409 F. Supp. 3d at 718. This factor is therefore neutral and does not favor either party. *See id.*

    **7.**    **Conclusion: Petitioner's Detention Violates Due Process**. Three of the six factors favor the Petitioner's argument that his detention is unreasonable. Two factors are neutral. Only one factor favors the government. Therefore, based on the evaluation of the above factors, this Court concludes that Petitioner's detention is unreasonable, and recommends that Petitioner's request for habeas relief be granted in

---

caused by the motion. *See Abdirizak Mohamed A.*, 2020 WL 1062913, at *4 (adopting the underlying report and recommendation which concluded that Petitioner's "one continuance is hardly material, given the total duration of Petitioner's detention" of over twenty months) (*Abdirizak Mohamed A. v. Brott*, No. 18-CV-3063 (ECT/HB), 2019 WL 8160682, at *5 (D. Minn. Sept. 12, 2019)).

8

part and denied in part. *See Abshir H.A. v. Barr*, No. CV 19-1033 (PAM/TNL), 2019 WL 3719414, at *2 (D. Minn. Aug. 7, 2019) (ordering that Petitioner's request for habeas relief be granted in part where three of the six *Muse* factors weighed in Petitioner's favor). Specifically, this Court recommends that an immigration judge be ordered to conduct a bond hearing within thirty days of an order granting habeas relief. *See Muse*, 409 F. Supp. 3d at 718.

### B.     Burden of Proof at the Bond Hearing

Petitioner asserts that at the bond hearing, the government should shoulder the burden of proving by clear and convincing evidence that Petitioner's continued detention is necessary to protect the community or to prevent him from fleeing. (Habeas Pet. ¶ 47.) The government argues that this Court should not "prospectively and preemptively shift the burden of proof at any future bond hearing in immigration court." (Resp. to Pet., p. 25.)

Recent decisions in this District hold that the burden of proof lies with the government and that the appropriate standard of proof is clear and convincing evidence. *See Omar M.*, 2021 WL 3442337, at *6; *Pedro O.*, 2021 WL 3046799, at *8. The circumstances in *Pedro O.* are factually similar. Like here, Pedro was taken into custody by ICE and subjected to removal proceedings. *Pedro O.*, 2021 WL 3046799, at *2. An "immigration judge granted Pedro's application for deferral of removal under the Convention Against Torture, finding it was more likely than not that he would be tortured if he were removed to Mexico." *Id.* ICE then, as here, "appealed th[e] ruling to the BIA." *Id.* But like Petitioner, Pedro did not receive a bond hearing at any point during the

course of his detention (the length of which had been 13 months as compared to Petitioner's which currently stands at over 20 months). *Id.* The Court in *Pedro O.* concluded that the government bears the burden at the bond hearing under the standard of clear and convincing evidence. *Id.* at *8.

Applying the reasoning in *Omar M.* and *Pedro O.*, this Court recommends that at the bond hearing, the government will bear the burden that Petitioner presents a danger to the community or a flight risk by clear and convincing evidence.

### C. Petitioner's Request for Immediate Release

Petitioner also seeks an order requiring his immediate release. (Habeas Pet. ¶ 47.) The Court declines to recommend granting this request. The remedy commonly adopted in cases like this one is an individualized bond hearing to ensure that any continued detention serves the purposes for which custody is required. *See, e.g.*, *Muse*, 409 F. Supp. 3d at 718 (concluding that an individualized bond hearing would "protect both Muse's rights under the Due Process Clause and the government's legitimate interest in detaining a removable alien when such detention is necessary to serve the purposes of § 1226(c)"). This is consistent with Justice Kennedy's concurrence in *Demore*, which suggested that an individualized determination of flight risk and danger may be necessary "if the continued detention became unreasonable or unjustified." *Demore*, 538 U.S. at 531 (Kennedy, J., concurring). Although the Court does not suggest that an order for immediate release could never be the appropriate habeas remedy for unconstitutionally prolonged detention under § 1226(c), such a remedy is not required in this case. Accordingly, the Court declines to recommend Petitioner's immediate release at this

time, provided that the government complies with the recommendation that a bond hearing be held promptly.

### D. Petitioner's Pending Motions

On May 27, 2021, Petitioner filed two motions requesting a temporary restraining order and emergency review of his claims. (Doc. Nos. 12, 13.) In the first motion requesting a temporary restraining order, Petitioner requests the same relief as in his petition: immediate release, or, in the alternative, a bond hearing. Petitioner's second motion for emergency review asks this court to review his petition. Because this Court has reviewed his petition, and because this Court finds the relief requested in Petitioner's motion for a temporary restraining order to be duplicative of Petitioner's original request under his habeas petition, the Court recommends **DENYING** Petitioner's "Instant Motion for Temporary Restraining Order or in the Alternative Release on Bond" and "Instant Motion for Emergency Review, Ruling and Decision" as moot in light of the Court's recommendation that Petitioner's request for a bond hearing be granted.

### RECOMMENDATION

For the reasons stated above, and based on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Petitioner's Petition for a writ of habeas corpus (Doc. No. 1) be **GRANTED IN PART** and **DENIED IN PART**.

2. Petitioner should receive an individualized bond hearing before an immigration judge within thirty days of any Order adopting this Report and Recommendation.

3. At the bond hearing, the parties should be allowed to present evidence and argument concerning whether Petitioner is a danger to the community and whether he is likely to flee if he is not detained.

4. At the hearing, the immigration judge should be required to place the burden of proof on the government, and continued detention should only be authorized if the government meets its burden with clear and convincing evidence.

5. Petitioner's request for immediate release be **DENIED**.

6. Petitioner's "Instant Motion for Temporary Restraining Order or in the Alternative Release on Bond" filed on May 27, 2021 (Doc. No. 12) be **DENIED**.

7. Petitioner's "Instant Motion for Emergency Review, Ruling and Decision" filed on May 27, 2021 (Doc. No. 13) be **DENIED**.

Date: September 1, 2021         *s/ Becky R. Thorson*
                                BECKY R. THORSON
                                United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), a party may file and serve specific written objections to this Report within **fourteen days**. A party may respond to those objections within **fourteen days** after service thereof. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).